# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In re:<br>**CHRISTOPHER BRANDON JUDGE**<br>**and RAQUELLE ANN JUDGE,**<br><br>~~~~~<br><br>**KRISTIN NEWMAN**<br>*Plaintiff,*<br><br>vs.<br><br>**CHRISTOPHER BRANDON JUDGE**<br>**and RAQUELLE ANN JUDGE,**<br><br>*Defendants.* | §§§§§§§§§§§§§§§ | **CHAPTER 7**<br><br>**CASE NO. 23-41465**<br><br>ADV. PRO. NO. _____<br><br>**JUDGE EDWARD L. MORRIS** |

## COMPLAINT UNDER SECTIONS 523(a)(4) and 523(a)(6)

KRISTIN NEWMAN, Plaintiff herein, by her undersigned counsel, for her complaint against the Defendants (Debtors), CHRISTOPHER BRANDON JUDGE and RAQUELLE ANN JUDGE, alleges, as follows:

1. This is an adversary proceeding to determine the dischargeabilty of a debt. It arises in a case under Title 11 of the United States Bankruptcy Code, namely, *In re: CHRISTOPHER BRANDON JUDGE and RAQUELLE ANN JUDGE*, Case Number 23-41465 (Chapter 7). This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a).

2. Plaintiff consents to entry of final orders or judgment by the bankruptcy court.

3. Defendants are the debtors in this Chapter 7 case. Plaintiff is a creditor of Defendants.

4. Defendants are indebted to Plaintiff in total sum of **$236,702.58** as described below.

5. Defendants are indebted to Plaintiff in the sum of **$60,578.98** on a debt for fraud or defalcation or both while acting in a fiduciary capacity as a result of the following events:

   a. On or about August 2, 2021 Defendants, purporting to be custom home builders, entered into a written agreement to construct a residential home for Plaintiff in Johnson County, Texas. Defendants represented one or more of the following:

   i. Defendants were knowledgeable, skilled qualified and capable of building a custom home for Plaintiff's residence;

   ii. That Defendants had the expertise, knowledge and skill necessary to build a custom home;

   iii. Christopher Brandon Judge was an architect, and that he was capable of designing the home and preparing a set of building plans;

   iv. That Defendants would prepare building plans;

   v. That Defendants would provide construction design services;

   vi. That Defendants would provide interior design services;

   vii. That Defendants would build the home in a good and workmanlike manner;

   viii. That Defendants would build the home within a set time-frame;

   ix. That Defendants would construct the home in accordance with applicable building codes;

   x. That Defendants would obtain necessary building permits;

   xi. That Defendants would supervise the construction project;

   xii. That Defendants would employ qualified, competent and, licensed sub-contractors;

  xiii. That the home would be constructed in accordance with generally accepted building standards;

  xiv. That the residential construction would be safe and suitable for human habitation;

  xv. That Defendants would employ an inspector and civil engineer to determine the quality and acceptability of Defendants work;

  xvi. That the Defendants would construct the Plaintiff's residence according to the terms of the written agreement, and would collect payments from the Plaintiff in accordance with a draw schedule provided by the Defendants.

  xvii. Defendants impliedly represented that they would hold all funds in a separate trust account as required by Texas law;

  xviii. Defendants impliedly represented that they would hold all funds in their capacity as fiduciaries; and

  xix. Defendants represented, on many occasions, between December 11, 2021 and May 2022, that the windows and doors had been ordered, and purchased, to convince the Plaintiff that work was progressing as agreed, and that materials were being purchased.

b. Plaintiff relied upon each of the representations of the Defendants. Each of the representations of the Defendants was false.

c. Defendants requested and collected sums of money from the Plaintiff in excess of the amounts specified in the contract and draw schedule. The contract required an initial deposit of $10,000.00, and payments of draws based on a percentage of the Base

Contract Price. The Defendants unilaterally and improperly increased the Draw Amount Requests to additionally include a percentage of the Allowance Item amount, which were not ordered, purchased or incorporated into the project. The Defendants also requested, and received Draw Number 1 in the amount of $17,246.25, which the Defendants represented was to be used "*to order window and doors immediately, permitting and engineering....*" Defendant Raquelle Judge informed Plaintiff that the windows and doors "*had been ordered*" to induce Plaintiff to continue with future payments. Similarly, Defendant Christopher Judge represented, on multiple occasions, that the windows and doors were ordered, and were scheduled to be installed, when in fact, the windows and doors had not been ordered. The Defendants did not use Draw #1 for any of these items, and instead diverted the money into their personal bank account, commingling it with other funds, and used the money for their personal use and benefit, in violation of their status as fiduciaries of Plaintiff's money. All of these over-collected sums of money total **$60,548.98**. Defendants are required by Texas law to hold these funds in a separate trust fund account; they are required to account for all such sums of money that they received; and they are fiduciaries as to the funds paid to them. Instead, Defendants diverted all such funds and commingled them with their personal monies, in violation of the Texas Trust Fund Statute.[1] The theft of these funds is an amount that is a criminal offense of a felony grade in Texas.

d. Plaintiff requested, on multiple occasions, that Defendants provide an accounting of all funds received, and all funds expended on the project, which Defendants failed and refused to provide.

---

[1] Tex Prop. Code, §162.001, et seq.

6. In the alternative, Defendants are indebted to the Plaintiff in the sum of **$60,548.98**, on a debt which arose when Defendants unlawfully took money belonging to Plaintiff, and which was required to be held in a construction trust account for the benefit of the Plaintiff, and which was solely intended for the construction of Plaintiff's residence.

7. Defendants collected proceeds from Plaintiff which were intended to be used for the construction of Plaintiff's residential home, and willfully and maliciously converted those proceeds to the Defendants' own use and personal benefit.

8. Additionally, Defendants employed unskilled, unqualified and unlicensed persons to construct the house solely from sketches and drawings prepared by the Defendants, without the benefit of any architectural plans, engineering plans, construction plans, framing plans, plumbing schedules or complete electrical design.  The subcontractors were hired only to make the structure "look" like the elevation sketches.  The Defendants failed to build the house in accordance with a proper set of building plans or architectural design or according to any building codes or electrical codes. Defendants abandoned the project after the installation of the foundation, the framing, electrical rough-in and plumbing rough-in.  The framing was dangerous and unsafe.  For example, Defendants designed the two-car garage with no rafters, and left it with a purported "cathedral ceiling," which was dangerous and unsafe and subject to collapse.  Likewise, the main roof ridge was dangerous and unsafe, as it needed beams and bracing to prevent it from falling in. The wall studs were not placed evenly, on sixteen inch centers, in accordance with normal building practices and codes. Wall studs were improperly located, bracing was inadequate, rafters were installed improperly and window and door headers were improper.  The wall studs were placed at varying spacing, contrary to normal building practices.  The window and door openings

were all of different sizes, and some were incorrect dimensions, altogether. The framing, in many areas, was incomplete, unsafe and dangerous as it lacked required bracing and support. A substantial portion of the framing had to be removed and replaced. The roof was designed with an incorrect pitch or slope, and the trusses and roofing had to be replaced on the front and back of the house to correct the slope. The porch roof was incorrectly designed and had to be removed and replaced. Supporting exterior posts were not constructed according to code and normal building standards. Plumbing was substandard, and not installed in the correct locations. The electrical work was substandard and in violation of code in many respects. Improper, aluminum wiring was installed in the house, improper wire gage was installed, and circuits were overloaded with excessive lights and receptacles leading to a violation of building code and unsafe conditions. Brick ledges were missing, the roof was improperly installed, and resulted in leaks. Defendants provided no inspection or supervision of any of the work being performed by the subcontractors, but, instead, employed unqualified persons to simply *make it look like a house*. The electrician and plumber were unlicensed and performed shoddy, incomplete, and unacceptable work. The work was not performed in a good and workmanlike manner or in accordance with applicable code. To date, the cost to repair the defects, through Draw #5 amounts to **$176,153.60**.

9. To date, the total debt of **$236,702.58** owed by Defendants to Plaintiff is nondischargeable under Section 523(a)(4) of the United States Bankruptcy Code.

10. Defendants are required to maintain a separate construction account for all of the Plaintiff's construction funds and are required to maintain an accounting of all funds held and paid out by the Defendants. Failure to maintain such an account is a criminal offense of a felony

grade. Defendant Christopher Judge admitted in October 2022 that he never had a separate construction account for the project.

11. Plaintiff reasonably relied upon Defendants' representations and thereby hired and continued to retain Defendants as the contractor on the Project. As a direct result, Plaintiff has incurred damages in the form of construction defects, delays, and increased Project costs, among other damages both direct and consequential.

12. Defendants falsely, and with intent to induce Plaintiff into hiring and retaining Defendants as contractor for the Project, made multiple false representations as to the quality, scope, price, work performed, materials ordered, and timeframe of the Project, as well as false representations regarding the qualifications of the Defendants and of their sub-contractors.

13. Plaintiff further alleges that by reason of the fact that Defendants knew that the representations made were false at the time they were made, the representations were willful and malicious and constitute conduct for which the law allows the imposition of exemplary and/or punitive damages. Further, the criminal actions of the Defendants constitute offenses of a felony grade for which the law allows the imposition of exemplary and/or punitive damages. Accordingly, Plaintiff requests that exemplary and/or punitive damages be awarded against the Defendants.

14. The conduct referenced herein constitutes fraud, fraudulent inducement, statutory fraud, and further, and/or in the alternative, fraudulent misrepresentation.

15. Pursuant to Tex. Bus. & Com. Code §27.01(b)-(e), Plaintiff seeks actual damages, exemplary damages, reasonable and necessary attorney's fees and costs. Plaintiff also seeks the equitable remedies of trusts and declaratory judgment.

16. Defendants wrongful taking of Plaintiff's money constitutes a conversion, for which Plaintiff hereby sues.

17. Pursuant to §162.001, et. Seq., of the Texas Property Code, (the "Trust Fund Statute"), construction payments are trust funds if the payments are made to a contractor under a construction contract for the improvement of specific property. Upon receipt of the trust funds, the contractor becomes a trustee of the trust funds for the benefit of the owner and subcontractors, otherwise known as the beneficiaries. If the contractor wrongfully retains or diverts the trust funds for debts unrelated to the Project, then the contractor, as well as its officers, and employees with control over the wrongful diversion/retention, are subject to statutory penalties for violating the Trust Fund Statute. Even further, the Trust Fund Statute imputes personal liability to those officers and employees.

18. As a contractor, the Defendants are a "trustee" of those funds and owe a fiduciary duty to the beneficiaries of the trust funds, such as Plaintiff.

19. The fiduciary duty is breached when a trustee intentionally, knowing, or with the intent to defraud, retains, uses, disburses, or otherwise diverts the proceeds received by them.

20. If the fiduciary obligation is breached, then the individual agents who had control over the wrongful diversion of the proceeds can be held personally liable for the misapplication of trust funds and statutory penalties. In this case, each Defendant had control over the trust funds and were each responsible for any wrongful diversion.

21. Sections 162.006 and 162.007 of the Texas Property Code required the Defendants to maintain a construction account in connection with the funds related to the construction of the Plaintiff's residential home on the Property.

22. Rather than maintain a construction account as required by the Texas Trust Fund Statute, Defendants sought to unjustly enrich themselves at the expense of the Plaintiff taking and using a portion of the construction funds for some purpose other than to perform the Project.

23. Plaintiff, by virtue of the Trust Fund Statute seeks to recover all recoverable damages from Defendants for the violation of the Texas Trust Fund Statute referenced herein, including economic damages, exemplary damages, attorney's fees, costs and statutory penalties authorized by the Trust Fund Statute. Plaintiff is further entitled to seek an accounting from the Defendants for the receipt, disbursement, and use of the funds paid to the Defendants.

CONSTRUCTIVE TRUST

24. The Defendants commingled Plaintiff's money with Defendant's money in violation of Texas law. Defendants have breached their fiduciary duty to Plaintiff by commingling funds and failing to establish a separate construction account.

25. Upon information and belief, the Defendant Raquelle Ann Judge purchased real property located at 908 Crescent, Denton, Denton County, Texas (the "Crescent Property") in 2022, and made improvements thereon, using some or all of the Plaintiff's money. The Crescent Property is legally described as:

Lot 22, Block 15, CARROL PARK ADDITION, THIRD FILING, an addition to the City of Denton, Denton County, Texas, according to the map or plat thereof recorded in Volume 350, Page 318, Map Records, Denton County, Texas, also known as 908 Crescent St., Denton TX 76201.

26. Upon information and belief, the Defendants Chris Judge purchased and improved a school bus that has been converted into an RV, using some or all of the Plaintiff's money.

27. Upon information and belief, the Defendant Chris Judge purchased a 2014 Jeep automobile, VIN 1C4BJWDG7EL200606, using some or all of the Plaintiff's money.

28. Plaintiff would show that Defendants purchased the school bus, the Jeep automobile and the Crescent Property with monies stolen from the Plaintiff, and Plaintiff should be declared the owner of the school bus, the Jeep automobile and the Crescent Property.

29. Plaintiff would show that Defendants have unclean hands and are barred from seeking any equitable relief from this Court.

30. Plaintiff requests the Court to impose a constructive trust on the school bus, the Jeep automobile and the Crescent Property described above, which is hereinafter referred to as the "Trust Property".

31. Plaintiff requests the Court to declare that Plaintiff is the sole owner of the Trust Property, in accordance with the Texas Declaratory Judgment Act.

32. In the alternative, Plaintiff requests the Court to impose a constructive trust on the Trust Property in favor of the Plaintiff.

33. In the alternative, Plaintiff requests the Court to order that the Trust Property are being held in a constructive trust for the Plaintiff.

34. In the alternative, the Plaintiff requests the Court to order the Trust Property be sold and award Plaintiff the net proceeds of the Trust Property.

35. In the alternative, Plaintiff requests the Court to impose a constructive trust against the Trust Property, order the sale of the property, and award a sum of money in favor of the Plaintiff for all amounts that Plaintiff has paid to the Defendants, from the net proceeds of the Trust Property.

36. In the alternative, Plaintiff requests the Court to impose a lien against the Trust Property for all amounts owed to the Plaintiff and to order a sale of the Trust Property in order for Plaintiff to recover her interest in the Trust Property, at least to the extent of the amount of monies the Defendants have misapplied and misappropriated.

37. In the alternative, Plaintiff requests the Court to appoint a receiver for the purpose of taking control of the Trust Property, and to sell the Trust Property in accordance with the order of the Court.

PRAYER

WHEREFORE, Plaintiff prays that the Court determine that the debt of **$236,702.58** is nondischargeable; that Plaintiff have judgment against the Defendants, jointly and severally, for **$236,702.58**; an imposition of a constructive trust has pleaded herein, and that Plaintiff have such other and further relief as requested hereinabove, as is just, including reasonable costs and attorney's fees.

Dated August 15, 2023

Respectfully submitted,

By: */s/ Kristin Newman*
Kristin Newman
SBOT # 24102279
1409 Kaitlyn Lane
Keller, TX 76248
T:  817-480-5877
E-Mail:  kristinnewman@me.com

/s/      *Michael S. Newman*
Michael S. Newman SBOT #14963900
Michael S. Newman, Attorney at Law, pllc
8813 N. Tarrant Parkway, Suite 252
North Richland Hills, Texas  76182-8461
Tel 817-656-8100
Email@NewmanLawTX.com
Attorney for Plaintiff

CERTIFICATE OF SERVICE

I certify that on August 15, 2023, a true and correct copy of the above and foregoing was served upon the following persons via the U.S. Bankruptcy Courts' electronic file management system.

Alvin Q. Malone

*/s/ Kristin Newman*
Kristin Newman